## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY BRAZIL, | |
| Plaintiff, | CIVIL ACTION NO. 3:22-CV-01514 |
| v. | (MEHALCHICK, M.J.) |
| SCRANTON SCHOOL BOARD, et al., | |
| Defendants. | |

## MEMORANDUM

Before the Court are two motions to dismiss filed by Defendants Scranton School Board, Superintendent Melissa McTiernan, Paul Dougherty, and John Doe School Board Members 1-8 (collectively, "School Defendants"), and Defendants Special Agent Robert McHugh and Pennsylvania State Trooper Michael Mulvey (collectively, "Commonwealth Defendants") filed on February 17, 2023, and April 10, 2023, respectively. (Doc. 17; Doc. 26). On September 28, 2022, Plaintiff Jeffrey Brazil ("Brazil") commenced this action by filing a complaint against School Defendants for violations of the Fourth, Fifth, and Fourteenth Amendments of the Constitution and 42 U.S.C § 1983. (Doc. 1). On February 3, 2023, Brazil filed the amended complaint. (Doc. 11). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 24). For the following reasons, Defendants' motions to dismiss shall be GRANTED in part and DENIED in part. (Doc. 17; Doc. 26).

## I.    BACKGROUND AND PROCEDURAL HISTORY

On September 28, 2022, Brazil initiated this action by filing a complaint against School Defendants and Commonwealth Defendants. (Doc. 1). School Defendants filed a motion to dismiss the original complaint on December 22, 2022. (Doc. 5). In response, Brazil filed the amended complaint on February 3, 2023, rendering School Defendants' motion to dismiss

moot. (Doc. 11; Doc. 16). According to the amended complaint, Brazil was previously employed by the Scranton School District (the "District") as the Director of Facilities from January 2012 until March 2019, when he resigned. (Doc. 11). Brazil alleges that School Defendants willfully and maliciously made false statements to various law enforcement and investigatory agencies leading to his arrest on September 30, 2022, and the institution of charges of reckless endangerment of children for failing to address the presence of lead and asbestos in several Scranton School District buildings. (Doc. 11, at 20-31). Brazil contends that he proactively conducted testing, made the results known, and provided remedial instruction to maintenance staff. (Doc. 11, ¶ 73). Brazil sets forth the following causes of action: malicious prosecution under 42 U.S.C. § 1983 and the Fourteenth Amendment against all Defendants (Count I); malicious prosecution and abuse of process under 42 U.S.C. § 1983 against all Defendants (Count II); false arrest under 42 U.S.C. § 1983 and Common Law against all Defendants (Count III); false imprisonment under 42 U.S.C. § 1983 and Common Law against all Defendants (Count IV); conspiracy to violate civil rights under 42 U.S.C. § 1983 against all Defendants (Count V); common law malicious prosecution against School Defendants (Count VI); common law malicious use and abuse of process against School Defendants (Count VII); and selective prosecution under 42 U.S.C. § 1983 and the Fourteenth Amendment against Commonwealth Defendants (Count VIII). (Doc. 11).

On February 17, 2023, School Defendants filed a renewed motion to dismiss. (Doc. 17). On April 10, 2023, Commonwealth Defendants filed a motion to dismiss. (Doc. 26). The motions to dismiss have been fully briefed and are now ripe for disposition.[1] (Doc. 17; Doc. 18; Doc. 21; Doc. 26; Doc. 27; Doc. 34; Doc. 36).

---

[1] In the reply brief, School Defendants raise for the first time that the amended complaint should be dismissed with prejudice because School Defendants enjoy absolute immunity for their grand jury testimony. (Doc. 25). In response, Brazil filed a motion for

## II.   STANDARD OF LAW

### A.   MOTION TO DISMISS

Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions…'"

---

leave to file a sur-reply based on the new arguments made by School Defendants in their reply brief. (Doc. 28). The Court declines to address or consider any new arguments raise in School Defendants' reply brief. *See Anspach v. City of Philadelphia*, 503 F.3d 256, 258 n.1 (3d Cir. 2007) ("failure to raise an argument in one's opening brief waives it"). Consequently, the proposed arguments that would be presented in the sur-reply do not impact the Court's analysis. Therefore, Brazil's motion to file a sur-reply is **DISMISSED** as **MOOT**. (Doc. 28).

*Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429-30 (3d Cir. 1997)). The court also need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. St. Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347. The Third Circuit has further instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

B. SECTION 1983

The Scranton School Board and the board members are state actors for purpose of § 1983. *See Kline ex rel. Arndt v. Mansfield*, 454 F. Supp. 2d 258, 262 (E.D. Pa. 2006). To state a claim under section 1983, a plaintiff must meet two threshold requirements. He must allege:

1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42 (1988); *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). If a defendant fails to act under color of state law when engaged in the alleged misconduct, a civil rights claim under section 1983 fails as a matter of jurisdiction, *Polk Cty. v. Dodson*, 454 U.S. 312, 315 (1981), and there is no need to determine whether a federal right has been violated. *Rendell–Baker v. Kohn*, 457 U.S. 830, 838 (1982).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988); *see also Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003) (citing *Rode*, 845 F.2d at 1207). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207; *accord Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293-96 (3d Cir. 1997); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995). As explained in *Rode*:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode*, 845 F.2d at 1207.

With respect to punitive damages for a § 1983 violation, this remedy is only available "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30 (1983). Regarding federal civil rights claims, "reckless indifference" refers to the defendant's knowledge of the illegality of his actions, not the egregiousness of his

actions. *Alexander v. Riga*, 208 F.3d 419, 431 (3d Cir. 2000) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999)).

**III.   DISCUSSION**

    A.   BRAZIL'S FOURTEENTH AMENDMENT CLAIMS

      Initially, Commonwealth Defendants argue that Brazil has abandoned his Fourteenth Amendment claims in Counts I, II, III, and IV in failing to oppose Commonwealth Defendants' dismissal arguments within the motion to dismiss and brief in support. (Doc. 36, at 2; Doc. 34). The filing of a brief in opposition to a motion to dismiss that fails to respond to a substantive argument to dismiss a particular claim results in the waiver or abandonment of that claim. *See Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008) (affirming district court's finding of waiver as to an argument where plaintiff had opportunity to address it in his opposition brief but failed to do so); *Levy-Tatum v. Navient Solutions, Inc.*, 183 F.Supp.3d 701, 712 (E.D. Pa. 2016) (collecting cases); *D'Angio v. Borough of Nescopeck*, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999) (finding claims waived where plaintiff failed to address defendant's argument in his brief in opposition to a motion to dismiss); *see also LM Gen. Ins. Co. v. LeBrun*, 470 F.Supp.3d 440, 460 (E.D. Pa. 2020); *Celestial Cmty. Dev. Corp. v. City of Philadelphia*, 901 F. Supp. 2d 566, 578 (E.D. Pa. 2012).

      The Court further notes that the amended complaint is devoid of any particular allegations made regarding the Fourteenth Amendment, and that Brazil's claims in Counts I through IV largely implicate the Fourth Amendment. (Doc. 11, at 2). The Supreme Court has held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

This rule has been extended to preclude both procedural and substantive due process claims where the rights underlying the same are derived from and otherwise protected by the Fourth Amendment. *See Meketa v. Kamoie*, 955 F. Supp. 2d 345, 365 (M.D. Pa. 2013) (citing *Robinson v. Clemons*, 987 F. Supp. 280, 284-85 (D.Del.1998) (substantive due process claim premised on "no probable cause" argument is governed by Fourth, not Fourteenth, Amendment); *Posey v. Swissvale Borough*, No. 2:12-CV-955, 2013 WL 989953, *15 (W.D. Pa. Mar. 13, 2013) (plaintiff's claims of false arrest and malicious prosecution "are more properly analyzed under the Fourth Amendment rather than procedural due process")). Thus, where the core of a plaintiff's claim arises from allegations of unlawful arrest, imprisonment, or prosecution, courts are directed to analyze those claims through the prism of the Fourth and not the Fourteenth Amendment.

For these reasons, the Court is compelled to dismiss Brazil's Fourteenth Amendment claims in Counts I through IV. Notably, Brazil has articulated no basis for a procedural or substantive due process claim separate and apart from the actions underlying his Fourth Amendment claims, by operation of the explicit source rule and its accepted applications in this Circuit. Accordingly, Brazil's Fourteenth Amendment claims against all Defendants in Counts I through IV are DISMISSED.

B. SCHOOL DEFENDANTS' MOTION TO DISMISS

School Defendants move to dismiss the amended complaint pursuant to Rule 12(6) of the Federal Rules of Civil Procedure. (Doc. 17; Doc. 18). The Court will address each argument in turn.

### 1. High Public Official Immunity

School Defendants contend that Brazil's claims should be dismissed because they are entitled to high public official immunity regarding the state law claims for actions taken in the

capacity of their position. (Doc. 18, at 23). Brazil denies that School Defendants are entitled to high public immunity and asserts School Defendants' argument is in bad faith. (Doc. 21, at 22-23).

"School board members and superintendents qualify as high public officials." *Kern v. Schuylkill Intermediate Unit 29*, No. 3:CV-08-1601, 2010 WL 235107, at *7 (M.D. Pa. Jan. 15, 2010) (citing *Zugarek v. S. Tioga Sch. Dist.*, 214 F. Supp. 2d 468, 479 (M.D. Pa. 2002)). As high public officials, they are "entitled to absolute immunity from state law suits when acting in their official capacities." *Zugarek*, 214 F. Supp. 2d at 479 (citing *Jackson v. Coatesville Area Sch. Dist.*, No. 99-1495, 2000 WL 1185375, at *9 (E.D. Pa. Aug. 21, 2000)). Brazil nowhere appears to allege that School Defendants were acting outside their official capacities; instead, as School Defendants note, Brazil alleges that School Defendants acted within the scope of their duties by committing the alleged misconduct "because of the policies, practices and/or customs of the Scranton School Board." (Doc. 11, ¶¶ 89, 96, 103, 110, 114, 124, 132). Therefore, School Defendants' motion to dismiss is GRANTED and Brazil's claims against individual School Defendants in their official capacities are DISMISSED, as they are entitled to high public official immunity as to state law civil liability.

### 2. *Monell* Liability

School Defendants move to dismiss Brazil's claims against Defendants Scranton School Board and John Doe School Board Members 1-8 for failure to allege *Monell* liability because Brazil fails to identify any policy, practice, or custom. (Doc. 18, at 8). While Brazil does not respond to School Defendants' arguments, the Court will nevertheless consider whether Brazil has sufficiently alleged *Monell* liability.

The purpose of § 1983 is to impose liability on a "*person, who under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any*

citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (emphasis added). Government entities, such as municipalities and school districts, are considered "persons" under § 1983. *See Rogers v. E. Lycoming Sch. Dist.*, No. CV 4:17-0696, 2017 WL 5135190, at *9 (M.D. Pa. Nov. 6, 2017). Because a "person" is only liable under § 1983 for their own conduct, it follows that a municipality or school district may only be liable under § 1983 "for their *own* illegal acts.'" *Does v. Se. Delco Sch. Dist.*, 272 F.Supp.3d 656, 667 (E.D. Pa. 2017) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)) (emphasis in original). Since Brazil names the Scranton School Board as a defendant and alleges that it violated his constitutional rights, the standards annunciated in *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691 (1978), applies. *See McGreevy v. Stroup,* 413 F.3d 359, 367-69 (3d Cir. 2005) (school district is subject to liability in a § 1983 action under *Monell*). Section 1983 does not allow municipal liability under a theory of *respondeat superior. See Bd. of the Cty. Comm'rs of Bryan Cty., Oklahoma v. Brown,* 520 U.S. 397, 403 (1997). A municipality is not liable under § 1983 merely for employing someone who violates a person's civil rights; rather, a municipality that does not directly violate a person's civil rights is liable only where it has in place a policy or custom that led to the violation. *Bryan Cty.*, 520 U.S. at 403; *see also Mann v. Palmerton Area School Dist.,* 33 F.Supp.3d 530, 540-41 (M.D. Pa. 2014) ("Municipal liability only attaches when a plaintiff demonstrates that an official policy or custom caused the asserted constitutional deprivation." (citation omitted)).

Brazil bears the burden of alleging that the Scranton School Board unconstitutionally implemented or executed a policy, statement, ordinance, regulation, decision, or custom leading to the stated violations of his constitutional rights. *See Damiano v. Scranton Sch. Dist.*, 135 F.Supp.3d 255, 267 (M.D. Pa. 2015); *Bryan Cty.*, 520 U.S. at 403. Further, Brazil must show that the alleged unlawful conduct of John Doe School Board Members 1-8 regarding

false and misleading statements made to a grand jury, constitutes a policy made by "decisionmaker[s] possess[ing] final authority to establish municipal policy" who "issue[ ] an official proclamation, policy, or edict." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996).

A school board's "policy" can be made "when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996). A policy for *Monell* purposes is an affirmative act attributable to the local government unit through an official act, proclamation, or edict. *McTernan v. City of York*, 564 F.3d 636, 657–58 (3d Cir. 2009) (citations omitted). The Third Circuit has held "an official with policymaking authority can create official policy, even by rendering a single decision." *McGreevy*, 413 F.3d at 367-68; *see also Connick*, 563 U.S. at 61 (holding "[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."). Additionally, if the policy at issue relates to a failure to train or supervise municipal employees, "liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (citation omitted).

Brazil may also show a custom by "evidence of knowledge and acquiescence." *Beck*, 89 F.3d at 971. A custom is established "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Watson v. Abington Twp.*, 478 F.3d 144, 155-56 (3d Cir. 2007) (quotations and citations omitted). Such knowledge and acquiescence can be established by demonstrating that the final policymakers "were aware of similar unlawful conduct in the

past, but failed to take precautions against future violations." *Beck*, 89 F.3d at 972 (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)). But even then, a plaintiff must also demonstrate that policymakers were "deliberately indifferent" in their acquiescence to a custom. *See Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 193 (3d Cir. 2009) (citing *Berg v. Cty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000)). "Deliberate indifference" is a stringent standard of fault. *Bryan Cty.*, 520 U.S. at 410. In this context, proving "deliberate indifference" requires a showing that policymakers failed to take action to control the agents of the government despite the obvious need to do so, along with the likelihood that the inadequacy of existing practice would result in the violation of constitutional rights. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) *312 (citing *Bryan Cty.*, 520 U.S. at 417-18 (Souter, J., dissenting)).

In the amended complaint, Brazil claims John Doe School Board Members "procured and facilitated criminal charges against [Brazil] via their misleading and false statements to [Commonwealth Defendants]." (Doc. 11, ¶ 65). Brazil alleges that as a result of John Doe School Board Members' actions, "a grand jury was conducted on September 18, 2020." (Doc. 11, ¶ 78). Brazil alleges that as a result of the "policies, practices and/or customs of the Scranton School Board," Defendants "instituted, caused or procured criminal proceedings against [Brazil] without probable cause and with malice." (Doc. 11, ¶¶ 65, 84, 89, 96, 103).

The Court finds that Brazil has not met his burden of identifying the policy, practice, or custom of Scranton School Board that violated Brazil's constitutional rights. Nor does Brazil specify what the alleged policy, practice, or custom entailed, when it was formulated, who issued it, or how it was enforced. Brazil does not contend that the Scranton School Board officially promulgated and issued an unconstitutional policy, practice, or custom. To the extent that Brazil may attempt to claim that the actions and decisions of Scranton School

Board members constitute Scranton School Board policy, the Court notes that a single act may represent government "policy" for *Monell* purposes when such act is made by someone possessing "final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1988). The Court looks to state law to determine who possesses this final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). Pennsylvania law is clear that a school district's board of school directors is the final policymaker with respect to "the management, supervision, control, or prohibition of exercises, athletics, or games of any kind." 24 Pa. C.S. § 5-511(a); *see also Patrick v. Great Valley Sch. Dist.*, 296 F. App'x 258, 262 (3d Cir. 2008) ("[Pennsylvania] state law allocates final policymaking authority for the management, supervision, control or prohibition of exercise, athletics or games of any kind to the . . . School Board.") (citing 24 Pa. C.S. § 5-511(a)). The amended complaint fails to allege the Scranton School Board or any of the John Doe School Board Members had actual or constructive knowledge of giving false statements under other to law enforcement officials in response to environmental safety queries. Brazil's statement that John Doe School Board Members made "express statements" that he disagreed with does not establish the existence or execution of an agreed-upon, commonly known, and followed or acquiesced in policy, practice, or custom. Therefore, Brazil fails to allege *Monell* liability against the Scranton School Board and John Does School Board Members 1-8. *See Flood v. Sherk*, 400 F.Supp.3d 295, 312 (W.D. Pa. 2019) (plaintiff failed to allege *Monell* liability against school board).

Accordingly, School Defendants' motion to dismiss is GRANTED and Brazil's claims against Defendants Scranton School Board and John Doe School Board Members 1-8 are DISMISSED.

### 3.  Counts I and VI – Malicious Prosecution Claims

Counts I and VI of the amended complaint set forth malicious prosecution claims under the Fourth Amendment and state law. (Doc. 11, at 20-21, 27-28). Brazil alleges School Defendants "instituted, caused or procured criminal proceedings against [Brazil] without probable cause and with malice, in violation of [Brazil]'s constitutional rights," and with the intentions to "shift blame to [Brazil] and away from themselves." (Doc. 11, ¶¶ 84, 118). Brazil asserts that School Defendants supplied information to Commonwealth Defendants that "was knowingly false and result[ed] in [Brazil]'s arrest and prosecution", including that Defendants Dougherty and McTiernan had no knowledge of asbestos or lead. (Doc. 11, ¶ 120). Brazil claims School Defendants "knew that the criminal charges against [Brazil] were unwarranted," and that "[a]s a direct and proximate result of the action of [School] Defendants, [Brazil] was falsely held against his well, expended monies including attorneys' fees in defense of the criminal charges against him, suffered irreparable harm to his reputation and was prohibited from operating his business." (Doc. 11, ¶¶ 86-87, 122).

In order to establish a § 1983 malicious prosecution claim, a plaintiff must be able to satisfy the common law elements of a malicious prosecution claim. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 792 (3d Cir. 2000). To prevail on a Fourth Amendment malicious prosecution claim, Brazil must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)); *see Hilfirty v. Shipman*, 91 F.3d 573, 579 (3d Cir. 1996)). The constitutional component of the claim also requires a showing of a loss of liberty beyond simply showing an unlawful

- 13 -

arrest. *Merkle*, 211 F.3d at 792 (citing *Gallo v. City of Philadelphia*, 161 F.3d 217, 225 (3d Cir. 1998)).

A Fourth Amendment malicious prosecution claim is "intended to redress [the] deprivation of liberty accompanying prosecution, not prosecution itself." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005); *see Gallo*, 161 F.3d at 222–24 (citing *Albright v. Bright*, 510 U.S. 266, 278-79 (1994)). "The claim arises from the prosecution, not the arrest. The alleged seizure must emanate from the prosecution, and 'must occur chronologically after the pressing of charges.'" *Roberts v. Caesar's Entertainment, Inc.*, 72 F.Supp.3d 575, 581 (E.D. Pa. 2014) (citing *Basile v. Twp. of Smith*, 752 F. Supp. 2d 643, 659 (W.D. Pa. 2010)). Thus, events that proceeded the initiation of prosecution, such as those between the initial encounter with the police and the filing or initiation of formal charges, are not the proper focus of or basis for a malicious prosecution claim. *Roberts*, 72 F.Supp.3d at 581.

In this case, Brazil must first show that School Defendants initiated a criminal proceeding against him. *See Johnson*, 477 F3d at 81-82. School Defendants move to dismiss Brazil's 42 U.S.C. § 1983 and state law malicious prosecution claims upon violations of the Fourth Amendment in Counts I and VI of the amended complaint, arguing that Brazil failed to allege facts showing that School Defendants initiated a criminal proceeding. (Doc. 18, at 10-11). In opposition, Brazil argues that School Defendants did, in fact, initiate criminal proceedings because School Defendants allegedly lied when telling investigators that they were unaware of asbestos, lead, or any mitigation efforts, and "intended their lies to inculpate [ ] Brazil as the wrongdoer thereby scapegoating Brazil and protecting [t]he School Defendants." (Doc. 21, at 14).

Though prosecutors are typically responsible for initiating such proceedings, other government actors can also be considered to have initiated a criminal proceeding by virtue of

their involvement in providing information to the prosecutor or the arresting police officers. *See Gallo*, 161 F.3d at 220 n.2 ("Decisions have 'recognized that a § 1983 malicious prosecution claim might be maintained against one who furnished false information to, or concealed material information from, prosecuting authorities.'" (citing 1A Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation, § 3.20, at 316 (3d ed. 1997))); *Brockington v. City of Philadelphia*, 354 F. Supp. 2d 563, 569 (E.D. Pa. 2005).

In *Vanderklok v. United States*, No. 15-00370, 2016 WL 4366976, at *10 (E.D. Pa. Aug. 16, 2016), Kieser, a TSA screening supervisor, called a police officer and told him that Vanderklok had made a bomb threat while going through airport security. Based on Kieser's allegation, Vanderklok was escorted to the police department and charged with disorderly conduct, placement of a bomb and terroristic threats. *Vanderklok*, 2016 WL 4366976, at *2. Vanderklok sued Kieser for malicious prosecution, claiming that Kieser's statement to the police was false and he had never made the bomb threat. *Vanderklok*, 2016 WL 4366976, at *10. Kieser argued that Vanderklok could not show that Kieser initiated the proceedings against him "because his arrest and prosecution were based on the independent decisions of Philadelphia Police Department supervisors, detectives, and the Philadelphia District Attorney's Office." *Vanderklok*, 2016 WL 4366976, at *10. The court rejected this argument and held that Kieser could nevertheless be deemed to have initiated the proceeding:

> It is settled law that officers who conceal and misrepresent material facts to the district attorney are not insulated from a § 1983 claim for malicious prosecution simply because the prosecutor, grand jury, trial court, and appellate court all act independently to facilitate erroneous convictions . . . . If the officers influenced or participated in the decision to institute criminal proceedings, they can be liable for malicious prosecution.

> *Vanderklok*, 2016 WL 4366976, at *10 (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014)).

Likewise, in *Merkle v. Upper Dublin School Dist.*, the plaintiff brought a malicious prosecution claim against a school district, the district superintendent and the school principal, who she alleged contacted the police, provided false or misleading information to them suggesting she was guilty of stealing and requested she be prosecuted. *Merkle*, 211 F.3d at 783. The Third Circuit held that:

> The action of the School District in initiating the criminal proceedings and pressing unfounded criminal charges against Merkle can render the District liable for its major role in a malicious prosecution . . . . [The Police Detective] acted only on what Principal Thomas told him. As instigators of the arrest, however, it is possible that the District and [the Superintendent] were in possession of additional information, not provided to Detective Hahn, that would negate any probable cause they may otherwise have had to prosecute Merkle.

> *Merkle*, 211 F.3d at 791.

Thus, Defendants McTiernan and Dougherty, government officials under the law, can be liable for malicious prosecution if they "influenced or participated in the decision to institute criminal proceedings." *Washington v. Brown*, No. CV 16-02955, 2017 WL 1833007, at *5 (E.D. Pa. May 5, 2017) (quoting *Vanderklok*, 2016 WL 4366976, at *10).

In the amended complaint, Brazil alleges that around August 15, 2019, "upon information and belief, John Doe school board members, along with Dougherty and McTiernan, procured and facilitated criminal charges against Plaintiff via their misleading and false statements to [Commonwealth Defendants]." (Doc. 11, ¶ 65). Brazil claims School Defendants' allegedly false statements triggered, and formed the sole basis of, the prosecution against him. (Doc. 11, ¶ 66). Unlike the defendants in *Vanderklock* and *Merkle*, there is no allegation that School Defendants contacted the police or otherwise filed a complaint against Brazil. Rather, Brazil attempts to allege School Defendants initiated criminal proceedings by quoting Commonwealth Defendants' testimony from their grand jury presentment and the affidavit of probable cause for Brazil's arrest. (Doc. 11, ¶ 67). Brazil submits "either Mulvey

and McHugh lied in their affidavit and presentment or every single school board member lied to them causing Plaintiff's arrest and criminal charges." (Doc. 11, ¶ 67).

Despite the lack of allegations stating if or how School Defendants "initiated" criminal proceedings, the Court finds that Brazil has sufficiently alleged the first element of a malicious prosecution claim. In *Boseman v. Upper Providence Twp.*, the Third Circuit assumed that the plaintiff satisfied the first prong, presuming that "but for [the arresting officer's] arrest and report, [the plaintiff] would not have been charged." 680 F. App'x 65, 68 (3d Cir. 2017). Here, although the amended complaint does not specifically allege how School Defendants initiated criminal proceedings, drawing all reasonable inferences in favor of Brazil, the non-moving party, the Court may infer that the only basis for the prosecution could have been a statement by School Defendants, who presumably provided the damaging information to the prosecutor that was later testified to at the grand jury. *See Brockington*, 354 F. Supp. 2d at 570 n.6; *Vanderklok*, 2016 WL 4366976, at *10; *Washington*, 2017 WL 1833007, at *6; *see also Phillips v. Cty. Of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("Courts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party."). Therefore, Brazil has sufficiently alleged the first element of a malicious prosecution claim.

Second, Brazil must show that the criminal proceeding ended in his favor. *Johnson, 477 F.3d at 81-82*. Because all of the charges against Brazil were dropped on June 14, 2021, Brazil satisfies this element. (Doc. 11, ¶ 82); *see Washington*, 2017 WL 1833007, at *6 (citing *Simmons v. Poltrone*, No. 96-8659, 1997 WL 805093, at *6 (E.D. Pa. Dec. 17, 1997) ("That the charges were dropped by the Commonwealth for lack of evidence establishes that proceedings terminated in favor of the plaintiff.")).

Third, Brazil must allege that School Defendants initiated the proceeding without probable cause. *Johnson*, 477 F.3d at 81-82. Irrespective of whether the police may have acted on the reasonable belief that they had probable cause to arrest and charge Brazil, whether School Defendants had probable cause to contact the police and pursue Brazil's grand jury indictment is an independent inquiry. *See Merkle*, 211 F.3d at 794-95; *see also Vanderklok*, 2016 WL 4366976, at *11 ("Indeed, it would make little sense to shield a defendant from a malicious prosecution claim because the facts he fabricated gave others probable cause to arrest and file criminal charges.").

"Probable cause exists when 'the facts and circumstances within the [defendant's] knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed.'" *Stetser v. Jinks*, 572 F. App'x 85, 87 (3d Cir. 2014) (quoting *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990)). "While 'the probable-cause standard is incapable of precise definition or quantification,' all interpretations of probable cause require a belief of guilt that is reasonable, as opposed to certain." *Halsey*, 750 F.3d at 299 (quoting *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005) (additional internal citations and quotations omitted)). "Generally, the existence of probable cause is a factual issue." *Halsey*, 750 F.3d at 300.

"Unlike the causation question, a probable cause inquiry is entirely objective. Thus, [the defendant's] view of the evidence is relevant only to the extent it explains what facts were available to him when he made his discretionary decision to initiate the proceedings." *Halsey*, 750 3.Fd at 299 (citation omitted). Here, taking Brazil's allegations as true and drawing reasonable inferences in his favor, one could conclude that given the facts available to School Defendants at the time they allegedly initiated the proceeding, they did not have probable cause to believe Brazil had committed a crime. Brazil contends that School Defendants

"instituted, caused or procured criminal proceedings against [Brazil] without probable cause," "knew that the criminal charges against [Brazil] were unwarranted," and supplied knowingly false information to Commonwealth Defendants. (Doc. 11, ¶¶ 84, 86, 120). If true, School Defendants could not have reasonably believed that Brazil was guilty of endangering children for allegedly failing to address lead and asbestos in several Scranton school buildings. Brazil also contends that Browne knew that School Defendants "initiated and procured the institution of criminal proceedings against [Brazil] without probable cause primarily to shift blame to [Brazil] and [a]way from themselves." (Doc. 11, ¶ 118). If true, School Defendants could not have reasonably believed that Brazil was guilty of endangering children. If School Defendants, via their alleged statements to Commonwealth Defendants, initiated the criminal proceedings without a reasonable basis for believing that Brazil committed any crimes or intended to, they lacked probable cause. Therefore, Brazil's allegations are sufficient with respect to this element. *See Huff v. Cheltenham Twp.*, No. 14-05555, 2015 WL 4041963, at *5 (E.D. Pa. July 1, 2015) (where material details about what happened remained in dispute and court was faced with a he-said-she-said situation, the court could not conclude that probable cause existed as a matter of law).

Next, regarding the fourth element, Brazil must plead facts that establish School Defendants "acted maliciously or for a purpose other than bringing the plaintiff to justice." *Johnson*, 477 F3d at 81-82. "Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." *Vanderklok*, 2016 WL 4366976, at *12 (quoting *Lee v. Mihalich,* 847 F.2d 66, 70 (3d Cir. 1988), *abrogated on other grounds, Albright*, 510 U.S. 266). "Malice may be inferred from the absence of probable cause." *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993), *abrogated on other grounds, Albright*, 510 U.S. at

266; *see also Henderson v. City of Philadelphia*, 853 F. Supp. 2d 514, 419 (E.D. Pa. 2014). "Malice may be inferred from the absence of probable cause." *Lippay,* 996 F.2d at 1502; *see also Henderson*, 853 F. Supp. 2d at 419. As discussed supra, Brazil has sufficiently alleged that School Defendants lacked probable cause, from which malice could then be inferred. Moreover, "[d]eliberately concealing or deliberately failing to disclose exculpatory evidence, like 'maliciously tendering false information,' can . . . form the basis for an inference that a [defendant] acted with malice in initiating and maintaining a prosecution." *Vanderklok*, 2016 WL 4366976, at *12 (quoting *Ankele v. Hambrick*, No. 02-4004, 2003 WL 21396862, at *1 n.4 (E.D. Pa. May 12, 2003)). Finally, Brazil's allegations allow the Court to infer that School Defendants may have acted for a number of improper purposes extraneous to bringing Brazil to justice, among them School Defendants' belief that Brazil endangered children by failing to perform environmental testing or disseminating any test results to Brazil's superiors and subordinates to take remedial action. Thus, Brazil has satisfied the fourth element.

Finally, Brazil must allege a "deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding." *Johnson*, 477 F.3d at 81-82. Brazil was arrested on September 30, 2020, "confined against his will," and charged with serious criminal charges. (Doc. 11, ¶¶ 77, 94). This alone is sufficient. *See Black v. Montgomery Cty.*, 835 F.3d 358, 368 (3d Cir. 2016), *as amended* (Sept. 16, 2016) ("A traditional arrest by an officer is a commonly understood type of seizure.") (citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011)). Thus, Brazil's allegations are sufficient to satisfy the fifth element.

Accordingly, School Defendants' motion to dismiss is DENIED as to Brazil's malicious prosecution claims.

#### 4.  Counts II and VII – Malicious Use and Abuse of Process Claims

Counts II and VII of the amended complaint set forth malicious use and abuse of process claims under 42 U.S.C. § 1983 and state law. (Doc. 11, at 21-22, 29-30). Brazil alleges all Defendants "collectively provided express statements to law enforcement denying having any knowledge of [Brazil]'s asbestos and water testing and remediation work – these statements were bold face lies that easily proven false while paid invoice records in Defendants' possession." (Doc. 11, ¶¶ 96, 132). Brazil alleges all Defendants' "application of the legal process was so lacking justification as to lose its legitimate function as a reasonably justifiable litigation procedure." (Doc. 11, ¶¶ 92, 127). Brazil contends:

> There can be no *legitimate* objection serve by criminally prosecuting a school administrator [plaintiff] for child endangerment while at the same time knowing, in fact admitting, that 1) no child was harmed and 2) [Brazil] proactively performed environmental testing and 3) [Brazil] disseminated test results to his supervisor and subordinates and commanded maintenance staff to take remedial action.

(Doc. 11, ¶¶ 93, 128) (emphasis in original).

Brazil claims all Defendants "knew that the criminal charges against [Brazil] were unwarranted and that the information they provided to law enforcement and the statements in their criminal complaint and affidavit of probable cause were clearly false." (Doc. 11, ¶¶ 94, 129).

"While malicious prosecution 'has to do with the wrongful initiation of civil process,' abuse of process 'is concerned with perversion of process after litigation has begun.'" *Gebhart v. Steffen*, 574 F. App'x 156, 160 (3d Cir. 2014) (quoting *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 394 (3d Cir. 2002)). In other words, a plaintiff must show that the criminal action "was initiated legitimately and then 'perverted.' " *Bristow v. Clevenger*, 80 F. Supp. 2d 421, 431 (M.D. Pa. 2000). If, however, a "process is wrongfully initiated and thereafter perverted, both torts lie." *Jennings v. Shuman*, 567 F.2d 1213, 1218 (3d Cir. 1977); *see also Gen. Refractories Co.*

*v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 307-08 (3d Cir. 2003) (providing analysis of what constitutes a "perversion" of the legal process, which leads to liability where the application of a legal process is so "lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure" (quoting *Nienstedt v. Wetzel*, 133 Ariz. 348, 354 (1982))). To establish a claim for abuse of process, a plaintiff must show evidence of an act or threat not authorized by the process or aimed at an illegitimate objective. *Mitchell v. Guzick*, 138 F. App'x 496, 502 (3d Cir. 2005) (citing *Bristow*, 80 F. Supp. 2d at 430-31).

Brazil's allegations in Counts II and VII do not support a claim for abuse of process. Brazil alleges that School Defendants offered false and misleading statements at a grand jury proceeding on September 18, 2020, and in an undated criminal complaint. (Doc. 11, at 21-22, 29-30). However, Brazil alleges no facts to support the conclusory statement that School Defendants' purpose for the criminal proceedings against him were "lacking in justification as to lose [their] legitimate function as [ ] reasonably justifiable litigation procedure." *Gen. Refractories Co.*, 337 F.3d at 307-08; *see Hart v. Tannery*, No. 10-CV-3675, 2011 WL 940311, at *11 (E.D. Pa. Mar. 14, 2011) (finding that, though plaintiff claimed defendant witness "forum shopped" criminal accusations to authorities "she knew to be false in order to have criminal charges brought against Plaintiff," defendant authorities merely carried out the process to its authorized conclusion). Further, Brazil fails to point to the clear "perversion" of the legal process that furthered such an illicit purpose after the proceedings were commenced. *See Jennings*, 567 F.2d at 1218 (citation omitted); *see also Gebhart*, 574 F. App'x at 160 ("Her allegations that Steffen wrongfully arrested her do not describe an abuse of process. Because Gebhart makes no allegations that Steffen participated in the proceedings after he initiated them, her claim against Steffen fails at the start." (internal citation omitted)); *Stevens v. Sullum*, No. 20-1911, 2021 WL 2784817, at *8 (M.D. Pa. July 2, 2021) ("Plaintiff fails to point to the

clear 'perversion' of the legal process that furthered such an illicit purpose after the proceedings were commenced."). The Court is further persuaded by School Defendants' statements that they "possessed no discretion" in the grand jury proceeding and "are not law enforcement personnel, a prosecuting attorney nor a member of the judiciary and as such have no decision-making authority or power in the conduct and process of the Grand Jury proceedings." (Doc. 18, at 16-17). Moreover, while Brazil alleges School Defendants falsely testified against him at the grand jury, Brazil fails to attach the pages of the alleged testimony. (Doc. 11).

Accordingly, School Defendants' motion to dismiss is GRANTED and Brazil's claim for malicious use and abuse of process is DISMISSED.

### 5. Counts III and IV – False Arrest and False Imprisonment

Counts III and IV of the amended complaint set forth false arrest and false imprisonment claims under 42 U.S.C. § 1983 and state law. (Doc. 11, at 23-26). Brazil alleges School Defendants knowingly provided false or incomplete information to law enforcement, which resulted in Brazil being confined against his will and deprived of his liberty. (Doc. 11, ¶¶ 100-02, 107-09).

To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995); *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). Similarly, to state a claim for false imprisonment, a plaintiff must allege that (1) he was imprisoned, and (2) his imprisonment was unlawful. *Glaspie v. Cty. of Gloucester*, No. CV 15-7691, 2018 WL 4179461, at *4 (D.N.J. Aug. 31, 2018). "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman*, 47 F.3d at 636. "Thus,

a claim of false imprisonment in this context is derivative of a claim for arrest without probable cause." *Morency v. City of Allentown*, No. 5:19-CV-5304, 2020 WL 1935640, at *5 (E.D. Pa. Apr. 22, 2020) (internal citation omitted). A claim for false arrest will fail "if there was probable cause for at least one of the offenses involved." *Barasky v. Dent*, No. 4:21-CV-02041, 2022 WL 14915557, at *5 (M.D. Pa. Oct. 25, 2022) (quoting *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 592 (M.D. Pa. 2008)). Pennsylvania state law false arrest claims and federal constitutional false arrest claims are "co-extensive as to both elements of proof and elements of damages." *Barasky*, 2022 WL 14915557, at *5 (quoting *Kokinda*, 557 F. Supp. 2d at 593-94). Because Brazil's false arrest and false imprisonment claims have the same basis and identical elements, the Court addresses them *pari passu*. *Meketa v. Kamoie*, 955 F. Supp. 2d 345, 355 n.3 (M.D. Pa. 2013).

Pennsylvania courts have held that a private individual or entity "can be held liable for false arrest and/or false imprisonment, where he knowingly provides false information to authorities and where the arrest and/or imprisonment results from this information." *Perry v. Redner's Mkt., Inc.*, No. 09-5645, 2010 WL 2572651, at *4 (E.D. Pa. June 21, 2010) ((citing *Doby v. Decrescenzo*, No. 94-3991, 1996 WL 510095, at *13 (E.D. Pa. Sept. 9, 1996); *Gilbert v. Feld*, 788 F. Supp. 854, 862 (E.D. Pa. 1992)). The *Perry*, *Doby*, and *Gilbert* decisions rely on the Pennsylvania Commonwealth Court's reasoning in *Hess v. County of Lancaster*, 514 A.2d 681 (Pa. Commw. Ct. 1986). In *Hess*, the court held that a private citizen who knowingly provides false information to law enforcement may be held liable for malicious prosecution because such an action "prevent[s] the police officer from adequately exercising independent judgment as to whether criminal charges should be instituted." *Doby*, 1996 WL 510095, at *13 (citing *Hess*, 514 A.2d at 683). In order to hold a private person responsible for the initiation of proceedings by a public official, Hess stated it must "appear that his desire to

have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false." *Hess*, 514 A.2d at 683. *Perry*, *Doby*, and *Gilbert* extended this rationale to allow for false arrest and imprisonment claims under such circumstances.[2] *See Perry*, 2010 WL 2572651, at *4; *Doby*, 1996 WL 510095, at *12-13; *Gilbert*, 788 F. Supp. at 862.

In the amended complaint, Brazil alleges that School Defendants falsely accused him of endangering children by providing information to law enforcement knowing that their accusations were false and incomplete. (Doc. 11, ¶¶ 100-01, 107-08). According to Brazil, School Defendants' recitation of this false and/or misleading information caused law enforcement to detain Brazil for further investigation and that had School Defendants not provided the false information, Brazil would not have been arrested or charged with criminal offenses. (Doc. 11, ¶¶ 101, 108). At the motion to dismiss stage, taking all the allegations in the amended complaint as true and drawing all inferences in Brazil's favor, the Court is unable to conclude as a matter of law that Brazil's arrests for endangerment of children did not result from the alleged false accusations made by School Defendants. *See Martucci v. Borough*, No. CV 3:17-1671, 2018 WL 1755728, at *8 (M.D. Pa. Apr. 10, 2018) (denying motion to dismiss where plaintiff pled defendants provided false and misleading information to police which led to plaintiff being charged with criminal offenses); *Reiber v. Fillipone*, No. CV 15-6192, 2016 WL 7034704, at *4 (E.D. Pa. Dec. 2, 2016) ("Discovery will likely reveal the extent, if any,

---

[2] Other courts, citing the technical differences between false imprisonment claims and malicious prosecution claims, have refused to extend the rationale and hold private citizens liable in the false imprisonment context. *See, e.g.*, *Thomas v. IPC Int'l Corp.*, Civ. A. No. 02-8049, 2004 WL 292477, at *4 (E.D. Pa. Feb. 12, 2004); *Naumov v. Progressive Ins. Agency*, Inc., CIV.A. 08-622, 2008 WL 5263703, at *5 (W.D. Pa. Dec. 17, 2008).

to which the information provided to the police by the [defendant] was the determining factor in the subsequent decision to criminally charge the Plaintiffs.").

Accordingly, School Defendants' motion to dismiss is DENIED as to Brazil's false arrest and false imprisonment claims.

### 6. Count V – Conspiracy to Violate Civil Rights

Count V of the amended complaint sets forth a conspiracy to violate civil rights claim under 42 U.S.C. § 1983. (Doc. 11, at 26-27). Brazil claims School Defendants "collectively provided *express statements* to law enforcement denying having any knowledge of [Brazil]'s asbestos and water testing and remediation work – these statements were bold face lies that easily proven false while paid invoice records in Defendants' possession." (Doc. 11, ¶ 114) (emphasis in original). Brazil alleges:

> [Commonwealth Defendants] along with the help of [School Defendants] created out of whole cloth a false dichotomy between [Brazil]/Kirijan administration and the Dougherty/McTiernan administration to support argument that the latter administration's remediation efforts were evidence of the former's criminal failure. In reality, the Dougherty/McTiernan administration sent "thousands" of children back to the same allegedly dangerous [building] in the fall of 2019 having the same exact knowledge of asbestos and lead that [Brazil] is alleged to have had; yet Dougherty/McTiernan were not prosecuted and charged for the same crimes as [Brazil].

> (Doc. 11, ¶ 113).

In order to establish a civil conspiracy claim under Section 1983, a plaintiff must satisfy the following elements: (1) "two or more persons conspire to deprive any person of [constitutional rights]"; (2) "one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy"; and (3) "'that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States,' with the added gloss under § 1983 that 'the conspirators act under the color of state law.'"

*Barasky v. Dent*, No. 4:21-CV-02041, 2023 WL 2775148, at *6 (M.D. Pa. Apr. 4, 2023)

(quoting *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (quoting *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001))). "To properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a constitutional agreement can be inferred," and this Court will not consider any "conclusory allegations [such as] that there was a corrupt conspiracy, an agreement, or an understanding in place between the [d]efendants." *Figueroa v. Shenandoah Borough*, No. 3:21-601, 2022 WL 1143532 at *4 (M.D. Pa. Apr. 18, 2022). A plaintiff must "set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Shearin v. E.F. Hutton Grp., Inc.*, 885 F.2d 1162, 1166 (3d Cir. 1989), *abrogated on other grounds by Beck v. Prupis*, 529 U.S. 494 (2000)). A conspiracy is "not parallel conduct by different parties; it must embody, at its heart, 'an agreement between the defendants and state officials—a meeting of the minds—to violate the plaintiff's rights.'" *Barasky*, 2022 WL 14915557, at *7; *see Zenquis v. City of Phila.*, 861 F. Supp. 2d 522, 528-29 (E.D. Pa. 2012).

The amended complaint alleges that all Defendants agreed to arrest Brazil without probable cause in order to "scapegoat" Brazil, and that School Defendants made statements to law enforcement, which were "bold face lies that easily proven false." (Doc. 11, ¶ 114). It appears that the conspiracy is alleged to have begun around August 15, 2019, when School Defendants "procured and facilitated criminal charges against [Brazil] via their misleading and false statements to [Commonwealth Defendants]," and to have ended when the criminal charges were dismissed on June 14, 2021. (Doc. 11, ¶¶ 65, 82). John Doe School Board Members are alleged to have played specific roles in the conspiracy by providing statements to law enforcement denying having knowledge of Brazil's testing and remediation efforts. (Doc. 11, ¶ 114).

School Defendants argue that the amended complaint fails to sufficiently plead specific factual allegations required to satisfy the elements of a civil conspiracy claim. (Doc. 18, at 20). Specifically, School Defendants maintain that Brazil does not plead facts as to who the actual conspirators were or when the purported agreement between the various individuals arose and the nature of the parameters of this purported agreement. (Doc. 18, at 20). The Court agrees as to all Defendants. Indeed, the amended complaint names six defendants, and only devotes four conclusory paragraphs to this claim. (Doc. 11, ¶¶ 112-15). The allegations fail to state the "certain actions of the alleged conspirators," which would require specific allegations as to the involvement of each named Defendant. The heart of Brazil's conspiracy claims is: "Defendants Mulvey and McHugh along with the help of Dougherty, McTiernan and the entire School Board, created out of whole cloth a false dichotomy between the [Brazil]/Kirijan administration and the Dougherty/McTiernan administration to support argument that the latter administration's remediation efforts were evidence of the former's criminal failure." (Doc. 11, ¶ 113).

While the amended complaint describes the purpose of the conspiracy—to arrest Brazil without probable cause to scapegoat him—and the duration of the conspiracy, it fails to attribute certain actions to each Defendant and, instead, Brazil sets forth the unsupported, speculative allegation that "there was a clear 'meeting of the minds' because the School Board Defendants could not effectively 'pass the buck' unless they were all on the same page regarding Brazil's alleged reckless neglect of children." (Doc. 21, at 20). Even where the amended complaint does allege vague conduct only by John Doe School Board Members, the conduct alleged does not describe those Defendants working together or with the other Defendants. Therefore, the Court finds that Brazil fails to allege any civil conspiracy claims against School Defendants.

Accordingly, School Defendants' motion to dismiss is GRANTED and Brazil's civil conspiracy claims are DISMISSED.

### 7. Punitive Damages

In the amended complaint, Brazil requests an award of punitive damages as relief. (Doc. 11, at 21, 23, 24, 26, 27, 29, 30, 32). School Defendants move to dismiss Brazil's allegations against them for punitive damages on the basis that punitive damages are not recoverable under sections 1983, 1985, or 1986 against the Scranton School District, a municipality, or against Defendants McTiernan, Dougherty, and John Doe School Board Members 1-8, local officials who were sued in their official capacities. (Doc. 18, at 21). School Defendants further argues that punitive damages are not recoverable under the Pennsylvania Tort Claims Act either. (Doc. 18, at 21 n.4) (citing *Feingold v. Southeastern Pennsylvania Transp. Auth.*, 517 A.2d 1270 (Pa. 1986)). Brazil argues that the amended complaint's allegations are sufficient to overcome the motion to dismiss regarding the punitive damages claim against School Defendants. (Doc. 21, at 23-24).

A plaintiff may obtain an award of punitive damages in a section 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Kolstad,* 527 U.S. at 536. A showing of actual malice, however, is not necessary. The plaintiff must establish that the defendant acted with a "subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations." *Kolstad,* 527 U.S. at 536 (internal quotation marks and citations omitted). "[A]n employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." *Kolstad,* 527 U.S. at 536.

At the onset, School Defendants are correct that Brazil may not recover punitive damages against the Scranton School Board. As a matter of public policy, punitive damages are not recoverable against a municipality in Pennsylvania. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 263 (1981); *Feingold*, 517 A.2d at 1277. Section 1983 does not permit awards of punitive damages against municipal entities, including school boards. *See Highhouse v. Wayne Highlands Sch. Dist.*, 205 F. Supp. 3d 639, 650 (M.D. Pa 2016) (citing *City of Newport*, 453 U.S. at 271); *Klump v. Nazareth Area Sch. Dist.*, 425 F. Supp. 2d 622, 643 (E.D. Pa. 2006). Therefore, the Court will grant School Defendants' motion to dismiss all claims for punitive damages as pertains to the Scranton School Board.

The policy safeguards protecting the Scranton School Board, however, do not extend to its employees sued in their individual capacities. *Doe by Brown v. Harrisburg Sch. Dist.*, No. 1:19-CV-1027, 2020 WL 4584372, at *7 (M.D. Pa. Aug. 10, 2020) (citing *Udujih v. City of Philadelphia*, 513 F. Supp. 2d 350, 358 (E.D. Pa. 2007) (collecting cases)). Under Pennsylvania law, punitive damages are available to a plaintiff when "the defendant's actions are so outrageous as to demonstrate willful, wanton, or reckless conduct." *Hutchinson ex rel. Hutchinson v. Luddy*, 870 A.2d 766, 770 (Pa. 2005); *see also Feld v. Merriam*, 485 A.2d 742, 748 (Pa. 1984). A claim for punitive damages under Section 1983 requires allegations that the defendant acted with "'a reckless or callous disregard of, or indifference to, the rights and safety of other.'" *Keenan v. City of Philadelphia*, 983 F.2d 459, 469-470 (3d Cir. 1983) (quoting *Smith*, 461 U.S. at 56). Thus, the punitive damages inquiry requires an assessment of the defendant's state of mind. *See Alexander*, 208 F.3d at 430-431; *Feld*, 485 A.2d at 748. Accordingly, a punitive damages analysis requires a careful look at the unique facts of each case. *Fiedler v. Stroudsburg Area Sch. Dist.*, 427 F. Supp. 3d 539, 558 (M.D. Pa. 2019). In light of the fact-intensive nature of the inquiry, courts in the Middle District often defer punitive

damages questions until after discovery. *See Doe by Brown*, 2020 WL 4584372, at *7; *Fiedler*, 427 F. Supp. 3d at 558; *Campbell v. Balon*, No. 16-779, 2017 WL 2880856, at *19 (M.D. Pa. July 6, 2017); *Bobrick Washroom Equip., Inc. v. Scranton Prods.*, Inc., No. 14-853, 2017 WL 2126320, at *11 n.15 (M.D. Pa. May 16, 2017).

Here, the misconduct alleged by Brazil as pertains to Defendants McTiernan, Dougherty, and John Doe School Board Members 1-8 is sufficient to support a plausible claim for punitive damages at the pleading stage. Brazil correctly points out that the amended complaint sues individual School Defendants in both their individual and official capacities. (Doc. 11, at 1). Brazil alleges that the individual School Defendants "knowingly and wrongfully" deprived him of his civil rights by knowingly supplying "false and misleading information" to law enforcement, which they knew to be false, "in a cowardly act of self-preservation and career advancement." (Doc. 11, ¶¶ 59, 66, 75). Brazil contends that individual School Defendants' actions ultimately led to his arrest and criminal charges. (Doc. 11, ¶ 67). If Brazil does establish that individual School Defendants acted as alleged, then a jury may conclude that individual School Defendants acted "in the face of a perceived risk" that their action would violate federal law, and an award of punitive damages may be appropriate. *See Jackson v. Dallas Sch. Dist.*, 954 F. Supp. 2d 304, 314 (M.D. Pa. 2013).

Accordingly, School Defendants' motion to dismiss is DENIED as to Brazil's claims for punitive damages against Defendants McTiernan, Dougherty, and John Doe School Board Members 1-8 in their individual capacities.

### 8. Qualified Immunity

Finally, School Defendants contend that Brazil's claims should be dismissed because they are entitled to qualified immunity. (Doc. 18, at 22). Brazil asserts School Defendants are not entitled to qualified immunity because they "fail to articulate how lying to police resulting

in Mr. Brazil's arrest does *not* clearly violate Mr. Brazil's fourth amendment rights." (Doc. 21, at 21).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft*, 563 U.S. at 735 (internal citations omitted). "[L]ower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Ashcroft*, 563 U.S. at 735. The doctrine "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law." *Ashcroft*, 563 U.S. at 735 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). While courts should resolve questions of qualified immunity at the earliest possible stage of litigation, a finding of qualified immunity "'will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint.'" *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)); *see Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) ("We caution, however, that it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases."). If the complaint fails to state a claim of a violation of clearly established law on its face, "a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Thomas*, 463 F.3d at 291 (citing *Mitchell*, 472 U.S. at 526).

School Defendants claim that they are entitled to qualified immunity because they did "not violate clearly established statutory or constitutional rights of which a reasonable person

would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Court emphasizes that at the motion to dismiss stage, "the defendant has the burden of pleading and proving qualified immunity." *Mitros v. Cooke*, 170 F. Supp. 2d 504, 507 (E.D. Pa. 2001) (citing *Harlow*, 457 U.S. at 815); *see also Reedy v. Evanson*, 615 F.3d 197, 223 (3d Cir. 2010) ("The burden of establishing entitlement to qualified immunity is on [the defendant]."). School Defendants have not met that burden.

Here, the immunity of School Defendants is not established on the face of the amended complaint as Brazil alleges they actively participated in the investigation and provided false information to law enforcement officials. *See Vinosky v. Consiglio*, No. 3:20-CV-134, 2021 WL 4461266, at *14 (W.D. Pa. Sept. 29, 2021). In asserting this defense, School Defendants fail to grabble with the facts and claims alleged in the amended complaint. *See Jennings v. Borst*, No. 5:18-CV-05624-JDW, 2019 WL 4447593, at *3 (E.D. Pa. Sept. 16, 2019) ("They do not highlight particular claims against them and analyze the pleadings nor do they conduct any of the other analysis necessary to establish qualified immunity. Instead, they just use the phrase 'qualified immunity' and cross their fingers in the hopes that the Court will dismiss the claims against them."). Further, School Defendants do not show that their actions did not violate Brazil's clearly established constitutional rights.

Accordingly, the Court will deny School Defendants' request for qualified immunity at this stage. This defense is dismissed without prejudice and School Defendants are free to raise this argument again.

### C.    COMMONWEALTH DEFENDANTS' MOTION TO DISMISS

Commonwealth Defendants move to dismiss the amended complaint pursuant to Rule 12(6) of the Federal Rules of Civil Procedure. (Doc. 26; Doc. 27; Doc. 36). The Court will address each argument in turn.

### 1. Sovereign Immunity

Counts III, IV, VI, and VII of the amended complaint allege state law claims against Commonwealth Defendants, in both their individual and official capacities, for malicious prosecution, false arrest, false imprisonment, and malicious use and abuse of process. (Doc. 11). Commonwealth Defendants move to dismiss these claims as barred by sovereign immunity. (Doc. 27, at 21-22). Without question, a police officer's acts of investigating criminal conduct, filing criminal charges, and arresting individuals suspected to have committed crimes are within the scope of his employment. *See, e.g. Ginter v. Skahill*, No. 04-2444, 2006 WL 3043083 at *12 (E.D. Pa. Oct. 17, 2006) (holding that the trooper "was acting within the scope of his duties as a Pennsylvania State Trooper when he investigated and applied for arrest warrants for Plaintiffs," and was immune from "claims of false imprisonment, false arrest and malicious prosecution"). "Under Pennsylvania law, even unauthorized acts may be within the scope of employment 'if they are clearly incidental to the master's business.'" *Brumfield v. Sanders*, 232 F.3d 376, 381 (3d Cir. 2000) (quoting *Shuman Estate v. Weber*, 419 A.2d 169 (Pa. Super. 1980)). "Where a state trooper is on duty and investigating a crime throughout the duration of the alleged offenses, [he] is acting within the scope of his employment and sovereign immunity will require the dismissal of state law claims against [him]." *DeForte v. Borough of Worthington*, 364 F.Supp.3d 458, 487 (W.D. Pa. 2019); *see also La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. 1992) (holding that a state trooper was immune from liability for false prosecution, false arrest, and abuse of process claims).

Accordingly, Commonwealth Defendants' motion to dismiss is GRANTED and Brazil's state law claims in Counts III, IV, VI, and VII against Commonwealth Defendants in their official capacities are DISMISSED as barred by sovereign immunity.

### 2. Fifth Amendment Claims

Next, insofar as Brazil claims that his due process rights under the Fifth Amendment were violated, the Court finds that these claims are subject to dismissal. Brazil has no Fifth Amendment claims since there is no alleged involvement by a federal actor. *See Damiano*, 135 F.Supp.3d at 266; *Hammond v. City of Wilkes-Barre*, No. 3:09-CV-2310, 2012 WL 3542277, *4 (M.D. Pa. Aug. 14, 2012) (due process claim under Fifth Amendment only applies to federal actors) (*citing Caldwell v. Beard*, 324 Fed. App'x 186, 189 (3d Cir. 2009)). Accordingly, Commonwealth Defendants motion to dismiss is GRANTED and Brazil's Fifth Amendment due process claims are DISMISSED as to all Defendants.

### 3. Counts I, III, IV and VI – Malicious Prosecution, False Arrest, and False Imprisonment

Commonwealth Defendants move to dismiss Brazil's malicious prosecution, false arrest, and false imprisonment claims in Counts I, III, IV, and VI of the amended complaint, arguing that he failed to meet his *prima facie* burden. (Doc. 27, at 13-22). As explained above, all four claims require Brazil to establish that Commonwealth Defendants lacked probable cause to believe Brazil committed a crime. *See Garcia v. Wind Creek Bethlehem, LLC*, No. 5:22-CV-00292, 2022 WL 4130754, at *13 (E.D. Pa. Sept. 12, 2022) (*citing Simonson v. Borough of Taylor*, 839 F. App'x 735, 738 (3d Cir. 2020) (holding that Fourth Amendment claims for unlawful search and seizure based on malicious prosecution, false arrest, and false imprisonment all require the plaintiff to establish that the defendant lacked probable cause to believe the plaintiff committed a crime)). In determining whether there is probable cause to arrest, an officer is entitled to rely on the reports of other officers, law enforcement bodies, and seemingly credible eyewitnesses. *See Porter v. Gray*, No. CIV.A.05-231ERIE, 2007 WL 464694, at *8 (W.D. Pa. Feb. 13, 2007) (collecting cases); *Karkut v. Target Corp.*, 453 F. Supp. 2d 874, 884 (E.D. Pa. 2006) (holding that police officer, who relied solely on report of store

security personnel, had probable cause to arrest plaintiff); *see also Tisdale v. City of Philadelphia*, 688 F. App'x 136, 138 (3d Cir. 2000) (concluding that arresting officer had probable cause based on report of eyewitness and "was not required to undertake an exhaustive investigation in order to validate the probable cause that, in [the officer]'s mind, already existed"). The probable cause standard does not require that officers' "determinations of credibility, were, in retrospect, accurate." *Wright*, 409 F.3d at 603. Similarly, the "validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillipo*, 443 U.S. 31, 36 (1979).

　　"Probable cause does not require that the prosecution have sufficient evidence to prove guilt beyond a reasonable doubt. Rather, probable cause requires only 'a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Peterson v. Att'y Gen. Pennsylvania*, 551 F. App'x 626, 629 (3d Cir. 2014) (quoting *U.S. v. Miknevich*, 638 F.3d 178, 185 (3d Cir. 2011)). A court must assess probable cause to arrest based on the totality of the circumstances known by the officer at the time he drafted the affidavit of probable cause. *Harvard v. Cesnalis*, 973 F.3d 190, 200, 202 n.4 (2020). An officer who prepares an affidavit of probable cause "is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 469 (3d Cir. 2016) (quoting *Wilson v. Russo*, 212 F.3d 781, 790 (3d Cir. 2000)). When a plaintiff's challenge to probable cause rests on an officer asserting or omitting information in an affidavit of probable cause, a court must (i) determine whether such "information was asserted or omitted . . . with at least reckless disregard for the truth"; and (ii) if so, "perform a word-by-word reconstruction of the affidavit" to determine whether the disputed information was material. *Dempsey*, 834 F.3d at 470.

On a motion to dismiss, the plaintiff must plead more than just that there was a lack of probable cause. *See Jecrois v. Sojak*, 736 F. App'x 343, 347 (3d Cir. 2018) (reversing denial of motion of to dismiss because a reconstructed affidavit supported probable cause); *Strunk v. E. Coventry Twp. Police Dep't*, 674 F. App'x 221, 224 (3d Cir. 2016) (affirming dismissal of false arrest and false imprisonment claims under Rule 12(b)(6) for failure to negate probable cause); *Shaffer v. City of Pittsburgh*, 650 F. App'x 111, 115 (3d Cir. 2016) (same). The plaintiff must offer facts and circumstances plausibly suggesting there was not probable cause to arrest. *Shaffer*, 650 F. App'x at 115.

The amended complaint states Commonwealth Defendants lacked probable cause and, instead, knew that the criminal charges against Brazil were unwarranted. (Doc. 11, ¶¶ 84, 86, 99, 106, 118). These allegations are based solely on the information provided to Commonwealth Defendants by School Defendants regarding Brazil's knowledge of asbestos or lead in Scranton School District buildings. There are no factual allegations to suggest that Commonwealth Defendants' execution of a criminal complaint was intentional, that they acted with any ill will, or that they had any reason to question the reliability of School Defendants' reports. Accordingly, Commonwealth Defendants' decision to rely on information provided by School Defendants, even if later determined to be inaccurate, does not eliminate the fact that they had probable cause at the time charges were filed, thereby defeating the claims based on false arrest and false imprisonment. *See Garcia*, 2022 WL 4130754, at *13 (dismissing Fourth Amendment false arrest, false imprisonment, and malicious prosecution claims with prejudice because despite plaintiff's subsequent exoneration for mistaken identity, there was probable cause to charge and arrest); *Damico v. Harrah's Philadelphia Casino & Racetrack*, 674 F. App'x 198, 202 (3d Cir. 2016) (holding that

even if casino staff misinformed police officer about plaintiff's behavior, officer had reason to believe information, which provided probable cause for arrest).

Moreover, "[a] 'grand jury indictment or presentment constitutes prima facie evidence of probable cause to prosecute'; this presumption will only be overcome 'by evidence that the presentment was procured by fraud, perjury or other corrupt means.". *Woodyard v. Cty. of Essex*, 514 F. App'x 177, 183 (3d Cir. 2013) (quoting *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989)). As Brazil notes, the criminal complaint was executed after an investigation into School Defendants' allegations was submitted to a state grand jury where Commonwealth Defendants related the eyewitness School Defendants' statements to the grand jury. (Doc. 11, ¶ 78). In turn, the grand jury recommended criminal proceedings against Brazil for recklessly endangering another person and endangering the welfare of children. (Doc. 11, ¶ 1). Based upon the grand jury's recommendation, Commonwealth Defendants executed a criminal complaint and signed an affidavit of probable cause incorporating the presentment to support that criminal complaint. (Doc. 11, ¶ 67). Brazil's allegation that Commonwealth Defendants committed perjury does not overcome the presumption of probable cause afforded to the grand jury presentment because Brazil's speculative allegation that Commonwealth Defendants knew at the time of filing the affidavit and criminal complaint that exculpatory evidence existed does not establish that Commonwealth Defendants themselves committed fraud, perjury, or other corrupt means before the grand jury. Moreover, here is no requirement that exculpatory evidence need be given to the grand jury. *See United States v. Williams*, 504 U.S. 36, 51 (1992). Therefore, Brazil has failed to plead sufficient averments to allege an exception to the presumption of probable cause has been established.

Further, while Brazil contends that other witnesses can provide testimony that contradicts the grandy jury testimony by other witnesses, this contention does not establish

that Commonwealth Defendants provided false information to prosecutors. The Fourth Amendment claim based on malicious prosecution also fails because although Commonwealth Defendants filed charges, a police officer may only be liable if he concealed or misrepresented material facts to the prosecutor. *See Halsey*, 750 F.3d at 297. There are no allegations that Commonwealth Defendants provided false information to or withheld information from the prosecutor. *See Dreibelbis v. Clark*, 813 F. App'x 64, 66-67 (3d Cir. 2020) (agreeing with the district court that a reasonable jury could not find for the plaintiff, whose claims included malicious prosecution, because there was no evidence that the arresting officer acted from any malicious motive, but, instead, relied on reports from the security guards to support probable cause for the charges); *Taylor v. City of Philadelphia*, No. 96-CV-740, 1998 WL 151802, at *9 (E.D. Pa. Apr. 1, 1998) (holding that officers who simply participated in an investigation did not "initiate proceedings" and thus, could not be liable for malicious prosecution).

With regard to malicious prosecution claims brought against a police officer, "[i]t is well settled law that 'officers who conceal or misrepresent material facts to the district attorney are not insulated from a § 1983 claim for malicious prosecution simply because the prosecutor, grand jury, trial court, and appellate court all act independently to facilitate erroneous convictions." *Wood v. Noonan*, 147 F.Supp.3d 262, 281 (M.D. Pa. 2015) (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1292 (10th Cir. 2004)); *see Basile v. Twp. of Smith*, 752 F. Supp. 2d 643, 659-60 (W.D. Pa. Nov. 10, 2010) (An "arrest alone is not enough in this circuit to constitute a seizure" for the purposes of a malicious prosecution claim) (citing *Gallo v. City of Phila.*,161 F.3d 217 (3d Cir. 1998)). "If the officers influences or participated in the decision to institute criminal proceedings, they can be liable for malicious prosecution." *Wood*, 147 F.Supp.3d at 281 (citing *Sykes v. Anderson*, 625 F.3d 294, 308-09, 317 (6th Cir. 2010)). Brazil's

allegation that he was arrested, without more, is insufficient to establish a seizure for malicious prosecution purposes at this stage of the litigation.

For all these reasons, Brazil has failed to allege his claims of malicious prosecution, false arrest, and false imprisonment against Commonwealth Defendants. Accordingly, Commonwealth Defendants' motion to dismiss is GRANTED and Brazil's claims in Counts I, III, IV, and VI against Commonwealth Defendants are DISMISSED.

### 4.   Counts II and VII – Malicious Use and Abuse of Process

Commonwealth Defendants move to dismiss Counts II and VII of the amended complaint, which set forth malicious use and abuse of process claims against all Defendants under 42 U.S.C. § 1983 and Pennsylvania state law. (Doc. 27, at 22-24). As noted above, Brazil alleges all Defendants "collectively provided express statements to law enforcement denying having any knowledge of [Brazil]'s asbestos and water testing and remediation work – these statements were bold face lies that easily proven false while paid invoice records in Defendants' possession." (Doc. 11, ¶¶ 96, 132). Brazil alleges all Defendants' "application of the legal process was so lacking justification as to lose its legitimate function as a reasonably justifiable litigation procedure." (Doc. 11, ¶¶ 92, 127). Brazil contends:

> There can be no *legitimate* objection serve by criminally prosecuting a school administrator [plaintiff] for child endangerment while at the same time knowing, in fact admitting, that 1) no child was harmed and 2) [Brazil] proactively performed environmental testing and 3) [Brazil] disseminated test results to his supervisor and subordinates and commanded maintenance staff to take remedial action.

(Doc. 11, ¶¶ 93, 128) (emphasis in original).

Brazil claims all Defendants "knew that the criminal charges against [Brazil] were unwarranted and that the information they provided to law enforcement and the statements in their criminal complaint and affidavit of probable cause were clearly false." (Doc. 11, ¶¶ 94, 129).

"[A] section 1983 claim for malicious abuse of process lies where 'prosecution is . . . used for a purpose other than that intended by the law.'"[3] *Rose*, 871 F.2d at 350 n.17 (quoting *Jennings,* 567 F.2d at 1217). However, "there is no cause of action for abuse of process if the claimant, even with bad intentions, merely carries out the process to its authorized conclusion." *Cameron v. Graphic Mgmt. Assocs.*, 817 F. Supp. 19, 21 (E.D. Pa. 1992). In *Jennings*, The Third Circuit explained the distinction between malicious abuse of process and malicious prosecution, also known as malicious use:

> We begin by distinguishing the justification given for issuance of process from the use to which process is put. The justification given may be either legitimate or illegitimate. If it is illegitimate, there is malicious use. Likewise, the use to which process is put can be either legitimate or illegitimate, and, if illegitimate, there is malicious abuse. For example, if the defendant justifies issuance of process by untruthfully saying that the plaintiff solicited burglary and uses the process only to have him jailed, this is malicious use only. It is not malicious abuse because jailing is the purpose for which criminal process was intended. If the defendant has process issued based on the truthful statement that the plaintiff solicited burglary and then uses the threat of prosecution for purposes of extortion, this is malicious abuse only. Finally, if, as is alleged in the present case, the defendant has process served based on false statements and uses threat of prosecution for purposes of extortion, both torts will lie.

*Jennings,* 567 F.2d at 1218-19 (footnote omitted).

In this case, the amended complaint contains no allegations about Commonwealth Defendants' misuse of the process after the grand jury recommended to execute criminal charges. *See Talbert v. Ciglar*, No. 18-2518, 2019 WL 653219, at *5 (E.D. Pa. Feb. 15, 2019) (concluding that plaintiff failed to allege abuse of process claim where he claimed merely that defendant improperly initiated proceedings); *Ference v. Twp. of Hamilton*, 538 F. Supp. 2d 785, 798 (D.N.J. 2008) ("To establish [an abuse of process] claim, there must be some proof of a definite act or threat not authorized by the process, or aimed at an objective not legitimate in

---

[3] "[T]he presence or absence of probable cause, [i.e., whether or not process is initiated legitimately,] is irrelevant to malicious abuse of process." *Jennings*, 567 F.2d at 1217.

the use of the process."). Further, Commonwealth Defendants correctly note that Brazil's allegations that Commonwealth Defendants committed an "abuse of process" in violation of the Fourth Amendment because former Attorney General "John[ ] Shapiro's office" held a "dog and pony show" press conference when Brazil was arrested to generate "positive publicity" to "destroy[ ] a man's life for political gain," are insufficient to establish an abuse of process claim against them. (Doc. 11, ¶¶ 78-79; Doc. 27, at 24; Doc. 36, at 6). Moreover, there are no facts allege to establish that Commonwealth Defendants acted in conjunction with the press conference. Commonwealth Defendants are not the Office of Attorney General and, because they are sued in their individual capacities, the actions of the Office of Attorney General, a separate legal entity, cannot be contributed to Commonwealth Defendants. There is no evidence that Commonwealth Defendants executed criminal charges against Brazil for the purpose of violating Brazil's legal right. *See Brown v. Johnston*, 675 F. Supp. 287, 290 (W.D. Pa. 1987).

Brazil fails to plead a plausible claim for malicious use and abuse of process. Accordingly, Commonwealth Defendants' motion to dismiss is GRANTED and Brazil's malicious use and abuse of process claims are DISMISSED.

### 5.   Count V – Conspiracy to Violate Civil Rights

In Count V of the amended complaint, Brazil asserts conspiracy to violate civil rights claim under 42 U.S.C. § 1983. (Doc. 11, at 26-27). Brazil alleges:

> [Commonwealth Defendants] along with the help of [School Defendants] created out of whole cloth a false dichotomy between [Brazil]/Kirijan administration and the Dougherty/McTiernan administration to support argument that the latter administration's remediation efforts were evidence of the former's criminal failure. In reality, the Dougherty/McTiernan administration sent "thousands" of children back to the same allegedly dangerous [building] in the fall of 2019 having the same exact knowledge of asbestos and lead that [Brazil] is alleged to have had; yet Dougherty/McTiernan were not prosecuted and charged for the same crimes as [Brazil].

(Doc. 11, ¶ 113).

As explained above, in order to establish a civil conspiracy claim under Section 1983, a plaintiff must satisfy the following elements: (1) "two or more persons conspire to deprive any person of [constitutional rights]"; (2) "one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy"; and (3) "'that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States,' with the added gloss under § 1983 that 'the conspirators act under the color of state law.'" Barasky, 2023 WL 2775148, at *6 (quoting Jutrowski, 904 F.3d at 294 n.15 (quoting Barnes Foundation, 242 F.3d at 162)). "To properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a constitutional agreement can be inferred," and this Court will not consider any "conclusory allegations [such as] that there was a corrupt conspiracy, an agreement, or an understanding in place between the [d]efendants." Figueroa, 2022 WL 1143532 at *4. A plaintiff must "set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." Shearin, 885 F.2d at 1166. A conspiracy is "not parallel conduct by different parties; it must embody, at its heart, 'an agreement between the defendants and state officials—a meeting of the minds—to violate the plaintiff's rights." Barasky, 2022 WL 14915557, at *7; see Zenquis, 861 F. Supp. 2d at 528-29.

The amended complaint alleges that Commonwealth Defendants, "along with the help of" School Defendants, created a "false dichotomy" to arrest Brazil without probable cause in order to "scapegoat" Brazil. (Doc. 11, ¶ 114). It appears that the conspiracy is alleged to have begun around August 15, 2019, when School Defendants "procured and facilitated criminal charges against [Brazil] via their misleading and false statements to [Commonwealth Defendants]," and to have ended when the criminal charges were dismissed on June 14, 2021.

(Doc. 11, ¶¶ 65, 82). However, there are no allegations as to how Commonwealth Defendants played specific roles in the conspiracy. In fact, according to Brazil's statements, other individuals made allegedly false statement to Commonwealth Defendants, who Brazil claims should have known that such statements were false. Yet, the amended complaint contains no factual averments as to the involvement of any Commonwealth Defendant or whether there was any meeting of the minds or understanding between all co-Defendants to allegedly deprive Brazil of his rights. Therefore, the Court finds that Brazil fails to allege any civil conspiracy claims against Commonwealth Defendants.

Accordingly, Commonwealth Defendants' motion to dismiss is GRANTED and Brazil's civil conspiracy claims are DISMISSED.

### 6. Count VIII – Selective Prosecution

In Count VIII of the amended complaint, Brazil asserts a selective prosecution claim against Commonwealth Defendants under 42 U.S.C. § 1983 and the Fourteenth Amendment. (Doc. 11, ¶¶ 134-41). Brazil alleges School Defendants, Dougherty and McTiernan, "replaced [Brazil] and Alexis Kirijan when the latter retired;" "had the same exact jobs as [Brazil] and Alexis Kirijan;" "had the same information relative to asbestos and lead that [Brazil] and Alexis Kirijan had;" and "sent thousands of children back to school in the fall of 2019 with no warning or other mitigation measures in place difference from [Brazil]." (Doc. 11, ¶¶ 135-38). According to Brazil, Commonwealth Defendants "were obviously aware of the above given the voluminous paper trail and their interviews of employees such as Jeff Kelly; yet [Commonwealth Defendants] did not investigate, arrest, charge or prosecute Dougherty and McTiernan." (Doc. 11, ¶ 138). Brazil claims "[t]his selective treatment was intentional—[Commonwealth Defendants] based their criminal complaint and affidavit of probable cause

against [Brazil] on the fabricated narrative that [Brazil]'s replacement remediated environmental hazards that [Brazil] allegedly ignored." (Doc. 11, ¶ 139).

The United States Court of Appeals for the Third Circuit has stated that selective prosecution is:

> is a form of discriminatory law enforcement that has been held to violate the Equal Protection Clause of the Fourteenth Amendment since *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L. Ed. 220 (1886), which held officials liable for "illegal discrimination" when they "applied and administered" a facially neutral law "with an evil eye and an unequal hand."

> *Davis v. Malitzki*, 451 F. App'x 228, 234 (3d Cir. 2011).

To bring a successful selective prosecution claim, Brazil must prove: (1) that persons similarly situated were not prosecuted; and (2) that the decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion or "some other arbitrary factor." *Davis*, 451 F. App'x at 234 (quoting *United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989)).

To bring a claim of selective prosecution Brazil must prove that he was "treated differently from other similarly situated individuals." *Dombrosky v. Stewart*, 555 F. App'x 195, 197 (3d Cir. 2014) (citing *Dique v. New Jersey State Police*, 603 F.3d 181, 188 (3d Cir. 2010)); *Perano v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) (at motion to dismiss stage, plaintiff "must allege facts sufficient to make plausible the existence of such similarly situated parties). "Persons are similarly situated under the Equal Protection Clause when they are alike in 'all relevant respects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir.2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

Taking the allegations in Brazil's complaint as true, Brazil fails to state a claim of selective prosecution on which relief may be granted. The sole allegations regarding Brazil's assertion of denial of "equal protection" in the amended complaint is that Brazil and McTiernan had the same jobs, but McTiernan was not prosecuted. (Doc. 11, ¶¶ 64, 135-38).

Nowhere does Brazil does not aver that any decision to prosecute him was made on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary favor.

Accordingly, Commonwealth Defendants' motion to dismiss is GRANTED and Brazil's ambiguously-asserted selective prosecution claims are DISMISSED for failure to state a claim upon which relief can be granted.

## IV.   LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson*, 293 F.3d at 108. In civil rights cases, District Courts are to follow this instruction "even [if] the plaintiff [is] represented by experienced counsel [and] never sought leave to amend." *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (citing *Dist. Council 47 v. Bradley*, 795 F.2d 310, 316 (3d Cir. 1986)). In this case, the Court will grant Brazil leave to file a second amended complaint in an attempt to cure the deficiencies outlined herein. *Grayson*, 293 F.3d at 108.

## V.   CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are **GRANTED in part** and **DENIED in part**. (Doc. 17; Doc. 26). In addition, Brazil's motion for leave to file sur reply is **DISMISSED** as **MOOT**. (Doc. 28).

An appropriate Order follows.

Dated: September 11, 2023          *s/ Karoline Mehalchick*
                                   **KAROLINE MEHALCHICK**
                                   **Chief United States Magistrate Judge**